**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Timothy Allen SIZEMORE,**
**Defendant–Appellant.**

No. 02–5179.

United States Court of Appeals,
Sixth Circuit.

Sept. 25, 2003.

Charles P. Wisdom, Jr., Asst. U.S. Attorney, James E. Arehart, Asst. U.S. Attorney, Michael Murphy, Asst. U.S. Attorney, U.S. Attorney's Office, Lexington, KY, for Plaintiff–Appellee.

Ned B. Pillersdorf, Joseph R. Lane, Pillersdorf, DeRossett & Barrett, Prestonsburg, KY, Timothy Allen Sizemore, pro se, Ashland, KY, for Defendant–Appellant.

Before KENNEDY, GUY, and DAUGHTREY, Circuit Judges.

KENNEDY, Circuit Judge.

A jury convicted defendant Timothy Allen Sizemore of being a felon in possession of six firearms in violation of 18 U.S.C. § 922(g)(1) and of being a felon in possession of six firearms while being subject to a domestic violence order in violation of 18 U.S.C. § 922(g)(8). Defendant seeks to enforce the plea agreement that, according to the defendant, the district court had implicitly accepted at defendant's plea hearing. Defendant also appeals his subsequent convictions on the ground that the evidence was insufficient to establish that he "knowingly possessed a firearm." For the reasons explained below, we affirm the judgment of conviction and defendant's sentence.

Under the tendered plea agreement, defendant Sizemore agreed to plead guilty to a one-count information of being a felon in knowing possession of a particular Smith & Wesson .38 caliber revolver [1] in violation of 18 U.S.C. § 922(g)(1). The government agreed to recommend that, under the Sentencing Guidelines, defendant's base offense level be fourteen due to his prior felony offense rendering him a "prohibited person," and that defendant's prior offense not be a crime of violence, which would

---

1. Presumably, the plea bargain permitted defendant to plead guilty with respect to this particular weapon, rather than the semi-automatic assault weapon, so as to avoid a higher base offense level under the Sentencing Guidelines.

increase the base offense level. In addition, the government agreed to recommend that the district court decrease defendant's base offense level to six because defendant's possession was "non-aggravated" or "solely for lawful sporting purposes or collection." The government also agreed to recommend that the district court further decrease defendant's base offense level due to his acceptance of responsibility. Such downward departures would have resulted in a sentencing range within which the government agreed to recommend probation. The government agreed to dismiss all other criminal charges against defendant.

At the plea hearing, after the government recited the plea agreement's provisions on the record, the district court accepted defendant's plea of guilty to being a felon in knowing possession of the specified Smith & Wesson .38 caliber revolver in violation of 18 U.S.C. § 922(g)(1), adjudging him guilty of that offense. At the sentencing hearing, the district court first confirmed that the parties had received the pre-sentence report and had no objections to it. The court then clarified that it had not yet accepted the plea agreement due to its concern with some of its calculations under the Sentencing Guidelines.[2] Specifically, regarding the proposed decrease in defendant's base offense level to six, the district court expressed its doubt that it is possible for one to have constructive possession of a firearm for collection or sporting purposes. Defendant replied that he constructively possessed the revolver because he knew that his girlfriend owned and controlled the weapon in her trailer and because defendant rented the trailer to her and owned the property on which the trailer lay; defendant then quipped, "That's as good as it gets." The

district court stated that it could not find defendant guilty of the offense in the plea agreement because defendant was implying that he had "absolutely nothing to do with" the weapon other than owning the trailer. Defendant then moved to set aside the guilty plea and schedule the matter for trial.

In considering that motion, the district court underscored that the guilty plea would have no factual basis to justify sentencing defendant under the plea agreement when defendant's factual allegations are simply that the firearm belonged to his girlfriend, and that defendant's sole involvement with the firearm was that he owned the trailer and had personal belongings in it. Specifically, the district court stated that it could accept neither the guilty plea nor the plea agreement based on a charge of constructive possession where defendant is claiming that he had never possessed the weapon or "exercised any dominion or control" over it. After noting that he "would approach the plea agreement with a great deal of reluctance anyway," defendant declined to admit that he had possessed or owned the firearm. The district court then granted defendant's motion to set aside his guilty plea and scheduled the case for trial. However, the court cautioned that a jury could still properly find that defendant had joint, constructive possession of the weapon based on these facts. After dismissing the one-count information to which defendant was to plead guilty under the plea agreement, the government prosecuted defendant under the initial, two-count indictment. A jury convicted defendant of being a felon in possession of six firearms in violation of 18 U.S.C. § 922(g)(1) and of being a felon in possession of six firearms while being subject to a domestic violence order in

---

**2.** We note that the plea agreement requires the district judge's signature to demonstrate his or her approval of it; here, the district judge never signed the agreement.

violation of 18 U.S.C. § 922(g)(8). On appeal, defendant seeks the enforcement of the plea agreement on the ground that the district court, after tacitly accepting the agreement at defendant's plea hearing, could not subsequently reject the plea agreement.

Under Federal Rule of Criminal Procedure 11(e)(1)(A) and/or (C),[3] the government, in exchange for the defendant's plea of guilty or nolo contendere to a charged offense, may agree to dismiss other charges against the defendant, may agree that a specific sentence is the proper disposition of the case, or may agree on the applicability of a particular Sentencing Guidelines' provision, policy statement, or factor. Fed.R.Crim.P. Rule 11(e)(2) (2001) (amended 2002). Under Federal Rule of Criminal Procedure 11(e)(2), if the plea agreement is of the type specified in subdivision (e)(1)(A) or (C), as is the agreement here due to its dismissal of other charges against defendant, the court, at the time that the plea is entered, has only three options: 1) it may accept the agreement; 2) it may reject the agreement; or 3) it may defer its decision on the agreement's acceptability until it has reviewed the presentence report. *See United States v. Skidmore,* 998 F.2d 372, 374–375 (6th Cir. 1993).

This Court has held that "the district court's failure to indicate the status of the plea agreement, within the requirements of Rule 11(e)(2), at the time [that] the court accepts" the defendant's guilty plea constitutes an acceptance of the plea agreement. *Id.* at 375; *accord United States v. Fleming,* 239 F.3d 761, 764 (6th Cir.2001) ("[W]hen a court does not clearly accept, reject, or defer consideration of a plea agreement, the law presumes acceptance."). We construe the ambiguity surrounding the district court's acceptance of the plea agreement against the district court. *Skidmore,* 998 F.2d at 375. Moreover, once the district court accepts the plea agreement, it may neither modify nor violate it; rather, it is "bound by the bargain." *Fleming,* 239 F.3d at 764 (internal quotation marks omitted) (holding that, because the district court lacked the power under Rule 11 to modify the plea agreement once it had accepted it, the court's advisement that the defendant had a right to appeal could not restore that right where the accepted plea agreement had waived it); *Skidmore,* 998 F.2d at 376 (holding that the district court, having tacitly accepted the plea agreement due to the court's ambiguity concerning its acceptance of the agreement, was bound to enforce the agreement as the parties understood it and, thus, could not excise a key provision of the agreement). Nevertheless, where the defendant voluntarily disavows the guilty plea upon which the plea agreement depends, the district court does not err in refusing to enforce that agreement even if it had previously accepted it. *See United States v. Wells,* 211 F.3d 988, 995 (6th Cir.2000) ("[A] defendant who breaches a plea agreement forfeits any right to its enforcement"; whether the defendant violated the plea agreement is a question that we review *de novo.*); *Skidmore,* 998 F.2d at 375 ("[A] defendant's failure to fulfill the terms of a pretrial agreement relieves the government of its reciprocal obligations under the agreement.") (internal quotation marks omitted).

■ Here, the parties dispute whether the district court had implicitly accepted

---

3. Our analysis relies on the 2001 version of the Federal Rule of Criminal Procedure as that was the version that was in effect at the time of the events underlying this appeal. We note that the 2002 amendments, which renumbered Rule 11(e)(2) as Rule 11(c)(3)(A), mostly reorganized Rule 11, except for a few substantive changes inapplicable here.

the plea agreement at the time that it accepted defendant's guilty plea at the plea hearing because it did not expressly state the status of the agreement at that time. However, we need not decide that issue because, when defendant voluntarily withdrew his guilty plea, he, thus, waived any right to the enforcement of the plea agreement even if the district court had previously accepted it. The record belies defendant's assertion that he only withdrew his guilty plea due to the district court's improper attempt to modify the accepted plea agreement. Rather, the colloquy at the sentencing hearing reveals that defendant made a strategic decision to withdraw his guilty plea because he believed-albeit erroneously-that he would fare better by going to trial than by maintaining his guilty plea under the plea agreement. The district court did not improperly attempt to modify the plea agreement when it questioned whether defendant could receive a decrease in his base offense level for constructive possession of a firearm for collection purposes. Under the plea agreement, the district court need not have accepted the decrease, which the government was simply required to recommend. In fact, the district court properly could have rejected the recommended decrease without affording defendant an opportunity to withdraw his guilty plea. *See* Fed.R.Crim.P. 11(e)(2). As the record reveals, in responding to the district court's concern over the requested sentencing decrease for "collection purposes," defendant began to repudiate the factual basis of constructive possession required to sustain his guilty plea. Thus, the district court reexamined the factual basis for the guilty plea only after defendant began to disclaim it. Furthermore, even after the district

court advised defendant that his allegations were negating his guilty plea's factual basis and were, thus, barring the court from sentencing defendant under the plea agreement, defendant persisted in alleging facts that controverted the requisite possession. By voluntarily withdrawing his guilty plea, defendant withdrew his plea agreement.

At trial, defendant moved for judgment of acquittal under Federal Rule of Criminal Procedure 29 at the conclusion of both the government's evidence and the defense's evidence. The district court denied defendant's motions. On appeal, in a *pro se*, supplemental brief, defendant challenges his subsequent convictions under 18 U.S.C. §§ 922(g)(1) and (8) on the ground that the evidence was insufficient to establish that he "knowingly possessed a firearm," an element which both offenses require.[4]

Regarding the element of "knowing possession of a firearm" under 18 U.S.C. § 922(g), such possession may be either actual or constructive. *United States v. Hardin*, 9 F.3d 1548, 1993 WL 460766, at *2 (6th Cir.1993). Actual possession exists where one "knowingly has direct physical control over ... [the weapon] at a given time." *Id.* (internal quotation marks omitted). Constructive possession exists where one "does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over ... [the firearm], either directly or through others." *Id.* (internal quotation marks omitted). "Possession need not be exclusive but may be joint." *Id.* (internal quotation marks omitted). The evidence establish-

---

4. At trial, defendant had stipulated that he had previously been convicted of a felony; that he was subject to a domestic violence order during the time period in the indict-

ment; and that all of the firearms in the indictment "were manufactured outside ... Kentucky and had previously traveled in interstate commerce."

ing possession may be direct, circumstantial, or both. *Id.*

In reviewing an appeal on the ground of insufficient evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (applying standard in habeas corpus context); *United States v. Vincent,* 20 F.3d 229, 233 (6th Cir.1994) (applying same standard on direct review). We must also "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Maliszewski,* 161 F.3d 992, 1006 (6th Cir.1998). Moreover, "[a] defendant claiming insufficiency of the evidence bears a very heavy burden." *Id.* at 1005.

█ The evidence was sufficient to establish beyond a reasonable doubt that defendant knowingly had constructive possession of the firearms-whether joint or exclusive. For example, a federal agent testified that: 1) multiple firearms were in the small bedroom that contained defendant's pants, which were lying next to the bed; 2) most of the weapons would be within the reaching distance of anyone lying on the bed; 3) in that same bedroom, articles of men's clothing were in the closet and in the chest upon which a firearm lay; 4) insurance policies listing defendant as the insured, deeds listing defendant as grantor or grantee of real estate, photographs of defendant, mail addressed to defendant, and defendant's bank and financial documents were in the closet of that bedroom; 5) two of defendant's jackets were in the trailer's front closet; 6) women's clothing and personal effects were in another bedroom; 7) both defendant and the bed in the small bedroom were warm even though defendant had claimed that he lived in another trailer-unheated and seemingly unoccupied-on the property. Based on this evidence, a rational juror could find that defendant stayed in the small bedroom in which the firearms were found and that he knowingly had the power and the intention to exercise dominion and control over those firearms. *See United States v. Layne,* 192 F.3d 556, 572 (6th Cir.1999) ("[T]he government can prove a defendant's control over firearms by showing that he has dominion over the premises in which the firearms are located.")

For the foregoing reasons, we affirm the judgment of conviction and defendant's sentence.