NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 30 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-50224 |
| Plaintiff-Appellee, | D.C. Nos. 3:20-cr-02880-LAB |
| v. | |
| DANIA HERNANDEZ-GOMEZ, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted December 8, 2022
Pasadena, California

Before: KELLY,[**] M. SMITH, and COLLINS, Circuit Judges.
Concurrence by Judge COLLINS.

Defendant-Appellant Dania Hernandez-Gomez pled guilty in a plea

agreement to conspiracy to evade currency reporting requirements under 18 U.S.C.

§ 371 and 31 U.S.C. §§ 5316(a), 5324(c). She appeals from the district court's

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Paul J. Kelly, Jr., United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

imposition of a 60-month sentence. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

The parties are familiar with the facts, so we need not restate them here. On appeal, Ms. Hernandez-Gomez argues that the district court erred by (1) not sufficiently finding clear and convincing evidence to support a 15-level upward departure to her Sentencing Guidelines calculation and (2) not offering her the opportunity to withdraw her guilty plea after "rejecting" her plea agreement, which was made pursuant to Fed. R. Crim. P. 11(c)(1)(B).

The substantive reasonableness of a sentence is evaluated for an abuse of discretion, and departures from the guidelines are part of that review. *United States v. Christensen*, 828 F.3d 763, 819–20 (9th Cir. 2016). Where a departure has an extremely disproportionate impact on the sentence, the underlying facts must be shown by clear and convincing evidence. *United States v. Lonich*, 23 F.4th 881, 910 (9th Cir. 2022). Considering six nonexhaustive factors, here the 15-level upward departure had an extremely disproportionate impact on the sentence. *See id.* at 910–11. The district court's factual findings are reviewed for clear error. *United States v. Wijegoonaratna*, 922 F.3d 983, 990 (9th Cir. 2019).

Ms. Hernandez-Gomez conceded that clear and convincing evidence existed by stipulating to and never challenging the 15-level upward departure recommended in her plea agreement. Even without the concession, the district

2

court thoroughly examined the record to support the 15-level upward departure by clear and convincing evidence and did not clearly err. The record reflects that Ms. Hernandez-Gomez had nearly 70 pounds of methamphetamine in a vehicle registered in her name, changed her story regarding how she acquired the vehicle, and made frequent trips across the U.S.–Mexico border. The district court did not abuse its discretion by imposing a 60-month sentence within the applicable guideline range. *See United States v. Carty*, 520 F.3d 984, 988 (9th Cir. 2008) ("[A] correctly calculated Guidelines sentence will normally not be found unreasonable on appeal.").

We review a district court's interpretation of the Federal Rules of Criminal Procedure de novo. *United States v. Garcia-Gonzalez*, 791 F.3d 1175, 1180 (9th Cir. 2015). We review a district court's interpretation of a plea agreement for clear error. *United States v. Jackson*, 21 F.4th 1205, 1213 (9th Cir. 2022). A sentencing recommendation in a Rule 11(c)(1)(B) ("type B") plea agreement, such as the one at issue here, does not bind the court and the defendant has no right to withdraw a guilty plea if the court declines to follow the recommendation. Fed. R. Crim. P. 11(c)(1)(B); *id.* 11(c)(3)(B). A court may accept or reject a Rule 11(c)(1)(A) ("type A") plea agreement, and if the court rejects it then the court must give the defendant an opportunity to withdraw the plea. *Id.* 11(c)(1)(A); *id.* 11(c)(5).

Here, the district court purported to "reject the plea agreement in this case,"

3

which was expressly type B. Using the word "reject" does not transform a non-binding type B plea agreement into a binding one that requires the court to give the defendant an opportunity to withdraw. The written plea agreement stated that it "embodie[d] the entire agreement between the parties" and affirmed that no outside promises were made. Even assuming that the district court erred when it "rejected" the plea agreement and did not give Ms. Hernandez-Gomez the opportunity to withdraw her plea, the court still sentenced her pursuant to the charge to which she pled guilty and followed the sentencing recommendations in the plea agreement. Again, Ms. Hernandez-Gomez stipulated to a 15-level upward departure in the plea agreement and never challenged it. Ms. Hernandez-Gomez has made no showing that she would have withdrawn her guilty plea if given the chance to do so. Ms. Hernandez-Gomez received everything she bargained for, and more, because the district court provided her a right to appeal that she otherwise waived in her plea agreement. Thus, even if there was error, it was harmless.

**AFFIRMED**.

4

*United States v. Hernandez-Gomez*, No. 21-50224

COLLINS, Circuit Judge, concurring in the judgment:

I concur in the judgment of affirmance, but my reasoning differs somewhat from the majority's.

Pursuant to a written plea agreement, Dania Hernandez-Gomez pleaded guilty to a superseding information alleging a single charge of conspiracy, under 18 U.S.C. § 371, to evade currency reporting requirements in violation of 31 U.S.C. §§ 5316(a), 5324(c). In her plea agreement, she stipulated that "the parties would jointly recommend," *inter alia*, "the following . . . Departure[]" from the otherwise applicable base offense level under the U.S. Sentencing Guidelines ("U.S.S.G.")—namely, a 15-level increase for "Dismissed/Uncharged Conduct" under U.S.S.G. § 5K2.21. That increase was based on the more than 32 kilograms of methamphetamine found in Hernandez-Gomez's car when she entered the United States. That importation was the subject of a still-pending earlier information alleging importation of methamphetamine in violation of 21 U.S.C. §§ 952, 960. *See United States v. Pacheco*, 912 F.2d 297, 305 (9th Cir. 1990) ("An original indictment remains pending until it is dismissed or until double jeopardy or due process would forbid prosecution under it."). Given that the importation offense against Hernandez-Gomez *had* been charged and was pending, the plea agreement's reference to it as "Dismissed/Uncharged Conduct" clearly reflected an

agreement that the original information would be *dismissed* at sentencing—which it was. The plea agreement further provided that Hernandez-Gomez could argue for "additional downward adjustments, departures, or variances" from the U.S.S.G., and the Government reserved the right to oppose them. The agreement also stated, however, that, because the agreement was "made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B)," the district court was not bound by the parties' sentencing recommendations and that Hernandez-Gomez could not withdraw her plea if the court did not follow them. The plea agreement also recited that Hernandez-Gomez waived "all rights to appeal and to collaterally attack every aspect of the conviction and sentence," except for claims of ineffective assistance of counsel.

With the agreed-upon 15-level upward departure, the base offense level was 25, and the guidelines range was 57–60 months (taking into account the statutory maximum sentence of five years). At sentencing, the district court expressed frustration with the plea agreement, with the "charge bargain" reflected in it, and with the Government's recommendation of a 46-month sentence. Although the court stated that it "reject[ed] the plea agreement," the court (1) followed the agreement's stipulated calculations; (2) rejected the parties' requests for a sentence outside that range; (3) imposed a 60-month sentence; and (4) granted the Government's motion to dismiss the underlying information. As to the latter, the

court stated that it "had no discretion on that" and "ha[d] to grant it." Nonetheless, because the court stated that it had rejected the plea agreement, the court agreed with defense counsel that Hernandez-Gomez was released from her plea agreement's appeal waiver.

Hernandez-Gomez now appeals, arguing that there was insufficient evidence to support the 15-level upward departure and that she should have been allowed to withdraw her guilty plea. Both of these arguments, like her taking of the appeal itself, seem unavoidably to rest on the position (1) that her plea agreement was in part a charge-bargain agreement under Federal Rule of Criminal Procedure 11(c)(1)(A); (2) that, when the district court "rejected" that agreement, its provisions were no longer binding; and (3) that she should have been given an opportunity to withdraw her plea under Rule 11(c)(5)(B).

Although the plea agreement stated that it was made under Rule "11(c)(1)(B)," the applicability of the rules ultimately turns on the substance of the plea agreement, and not its labels. *Cf.* FED. R. CRIM. P. 11(h) ("A variance from the requirements of this rule is harmless error if it does not affect substantial rights."). For the reasons I have explained, I think it is quite clear that the plea agreement reflected the parties' agreement that the original information would be dismissed. Had the Government, at the end of the sentencing hearing, declined to dismiss the original information and instead announced an intention to proceed on

that document or on a forthcoming indictment on the same charge, I have no doubt whatsoever that that would have been a clear breach of this plea agreement. So Hernandez-Gomez's plea agreement was at least in part a charge-bargain agreement under Rule 11(c)(1)(A). But it was also an agreement under Rule 11(c)(1)(B), because it additionally contained specific agreed-upon sentencing recommendations that were not binding upon the court. The Advisory Committee, in fashioning Rule 11, expressly contemplated such hybrid agreements. *See* FED. R. CRIM. P. 11, advis. comm. note (1979 amend.).

Although the Government agrees that Hernandez-Gomez "would be entitled to a remand" if her plea agreement was under Rule 11(c)(1)(A), I disagree. Once again, the application of Rule 11 turns on substance, not labels. Although the district court announced that it "rejected" the plea agreement, it unambiguously held that it was *bound* to grant the Government's motion to dismiss the original information, and it did so. The district court thus did not "reject" the plea agreement in any sense that is relevant to Rule 11(c)(1)(A)'s application. In describing the consequences of a "reject[ion]" within the meaning of Rule 11(c)(1)(A), the rule states that the court must "advise the defendant personally *that the court is not required to follow the plea agreement* and give the defendant an opportunity to withdraw the plea." *See* FED. R. CRIM. P. 11(c)(5)(B) (emphasis added). The rule thus contemplates that the sort of "reject[ion]" that triggers these

4

consequences in this context is one in which the court is "not required to follow the plea agreement" with respect to the agreed-upon dismissal of charges, and it is *then* that the court must provide the two specified advisals. *See* FED. R. CRIM. P. 11, advis. comm. note (1979 amend.) (stating that the court's options concerning the charge-bargain portion of a plea agreement are "either [1] *accept the agreement to dismiss these counts* or [2] else reject it and allow the defendant to withdraw his plea" (emphasis added)). Because the district court here *accepted* that it was obligated to dismiss the original information, and did so, it did not "reject" the Rule 11(c)(1)(A) aspect of Hernandez-Gomez's plea agreement in the sense contemplated by that rule. The agreement therefore remained fully binding, and the district court had no obligation under Rule 11(c)(5)(B) to advise Hernandez-Gomez of a right to withdraw her plea.

As to the Rule 11(c)(1)(B) portion of the agreement, the district court was not bound by the parties' stipulations as reflected in the agreement, but it nonetheless followed them and selected a sentence within the resulting guidelines range. Hernandez-Gomez has not contended that the district court's actions in that regard give rise to any right to withdraw her plea.

Accordingly, Hernandez-Gomez received exactly what she bargained for in her plea agreement, and she remains fully bound by it. Even assuming arguendo

that she was nonetheless entitled under our caselaw to pursue this appeal,[1] her arguments on that appeal must be consistent with that agreement. And since she expressly stipulated to the 15-level increase in her base offense level, she cannot now be heard to attack it. And even if she could, the district court did not clearly err in finding that there was a sufficient factual basis for such a departure here.

For these reasons, I concur in the court's judgment affirming Hernandez-Gomez's conviction and sentence.

---

[1] The Government concedes that, under *United States v. Buchanan*, 59 F.3d 914 (9th Cir. 1996), the district court's oral statement at sentencing that Hernandez-Gomez had a right to appeal renders the appeal waiver in the plea agreement "not enforceable." *Id*. at 918; *see also United States v. Felix*, 561 F.3d 1036, 1040–41 (9th Cir. 2009) (stating that *Buchanan* rests on the theory that the Government waives reliance on the appeal waiver if it fails immediately to object to the district court's comment). *Buchanan* has been subject to a "chorus of criticism" in our sister circuits, *see United States v. Fleming*, 239 F.3d 761, 765 (6th Cir. 2001), and in an appropriate case, the en banc court should eliminate that circuit split by overruling *Buchanan*.